ON DOCKET

MAR 3  2000

CY DEPUTY



FILED          LODGED
               RECEIVED

MAR 3 0 2000

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SEEDER TREE COMPANY, INC., a Washington corporation, | ) )  NO.   C99-5034(RJB)FDB |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| DANIEL GLICKMAN, the Secretary of Agriculture; UNITED STATES DEPARTMENT OF AGRICULTURE, UNITED STATES FOREST SERVICE, | ) FINDINGS OF FACT AND ) CONCLUSIONS OF LAW ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| FRIENDS OF THE COLUMBIA GORGE, | ) ) ) |
| Intervenor | ) ) |

This action came on for trial and was tried on March 28, 2000, without a jury.

Stephen J. Bean, Esq. and Cecilia M. Clynch, Esq. appeared as counsel for plaintiff. Brian

C. Kipnis, Assistant United States Attorney, appeared as counsel for defendants. Gary Kahn,

Esq., appeared as counsel for intervenor. Having heard the testimony, examined the evidence

submitted by the parties, and heard the arguments of their counsel, and this cause having been

submitted for decision, the Court, being fully advised, makes the following findings of fact

and conclusions of law:

## FINDINGS OF FACT

1.    Seeder Tree Company, Inc. is the owner of 240 acres of forest land located

within Skamania County, Washington, known as the Augspurger Mountain property. The

Augspurger Mountain property is located within the Special Management Area ("SMA") of

the Columbia River Gorge National Scenic Area (CRGNSA). By virtue of its location within

1  the SMA, the Augspurger Mountain property is subject to certain land use restrictions
2  including limitations on logging practices.

3      2.      In late 1994, the family of the previous owner of the Augspurger Mountain
4  property, Andrew Holman, approached the Forest Service about a possible sale of the
5  property.  At the same time, the Holman family was marketing the property through a real
6  estate agent.

7      3.      A series of meetings and conversations took place in May, 1995 and June, 1995
8  between an interested purchaser of the Augspurger Mountain property, David Thompson,
9  Vice President of Seeder Tree Company, and the Forest Service.  Mr. Thompson let it be
10  known that if Seeder Tree Company purchased the property from the Holman family, it would
11  be interested in selling its property to the Forest Service if the transaction could be
12  accomplished quickly.  Seeder Tree Company wished to have a near simultaneous conveyance
13  of the Augspurger Mountain property to the Forest Service if that was possible.  Given the
14  time frame envisioned by Seeder Tree Company the parties focused on a "tripartite land
15  exchange" as the method of acquisition most likely to meet Seeder Tree Company's needs.
16  Although Mr. Thompson was also encouraged to make a "Section 8(o) offer."[1] Mr. Thompson
17  rejected such an idea because Seeder Tree Company was not interested in holding on to the
18  property for three years.

19      4.      On October 18, 1995, sale of the Augspurger Mountain property to Seeder Tree
20  Company closed at a sales price of $2 million.

21      5.      Although the parties agreed upon a general schedule which envisioned the
22  signing of an "exchange agreement" by November 1, 1995, problems with the appraisal
23  delayed the acquisition process.  Ultimately, the appraisal, which placed a value on the
24  property of $2.5 million, was approved by the Forest Service on December 15, 1995.

25      6.      The next significant step was for the Forest Service to seek the approval of the
26  Skamania County Commissioners for the land exchange as required by national Forest Service
27  policy.  However, before a meeting with Skamania County could take place, Seeder Tree

28
_____

[1]*See* 16 U.S.C. § 544f(o), discussed *infra*.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2
(C99-5034(RJB)FDB)

1   Company asked to meet with the Forest Service concerning the Augspurger Mountain
2   property. This meeting, which took place on January 12, 1996 at the CRGNSA headquarters
3   in Hood River, Oregon, was attended by Mr. Thompson, Joseph H. Schreiner, President of
4   Seeder Tree Company, and Art Carroll, Ed Medina and Cyndi Swanson of the U.S. Forest
5   Service. The meeting was stormy. Mr. Schreiner, who had not been previously involved in
6   any of the discussions between Seeder Tree Company and the Forest Service, was upset with
7   the Forest Service because he did not feel that it was living up to commitments it had made to
8   his company. Mr. Schreiner was angry because he felt his company had been misled. At
9   several points he threatened to clear-cut the property at the first opportunity. The Forest
10  Service personnel explained the work that had been completed towards accomplishing a
11  tripartite exchange and the steps remaining. The Forest Service expressed optimism that the
12  Skamania County Commissioners would approve the exchange and the transaction could be
13  completed in March.

14      7.      The possibility of Seeder Tree making a section 8(o) offer was also discussed at
15  the January 12, 1996 meeting. The Forest Service personnel posed as an option that Seeder
16  Tree make a section 8(o) offer. The Forest Service personnel produce paperwork containing
17  the Forest Service policy on 8(o) offers, and a form intended to facilitate the making an 8(o)
18  offer.

19      8.      Mr. Schreiner testified that in the course of the discussions he verbally agreed to
20  make a section 8(o) offer. His testimony was not entirely credible. Mr. Thompson testified
21  that he was uncertain as to whether Mr. Schreiner had made a clear verbal 8(o) offer. Mr.
22  Medina and Ms. Swanson of the Forest Service testified that Mr. Schreiner had not made an
23  8(o) offer.

24      9.      I must find, especially in light of Seeder Tree's prior reluctance to consider the
25  section 8(o) acquisition process, that neither Mr. Schreiner nor Mr. Thompson made an
26  unambiguous offer under section 8(o) during the meeting on January 12, 1996.

27      10.      At the conclusion of the meeting, the parties agreed to move forward with the
28  tripartite exchange process, although Mr. Schreiner demanded that the acquisition be

*FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3*
(C99-5034(RJB)FDB)

1    completed within the next few months.  Mr. Schreiner asserted that Seeder Tree Company had

2    a right to harvest the property at any time and he threatened that Seeder Tree Company would

3    simply move ahead and clear-cut the property if he determined that the Forest Service was not

4    moving fast enough.

5         11.    On February 26, 1996, the County notified the Forest Service that it had decided

6    to reject the tripartite land exchange proposal for the Augspurger Mountain property.  This

7    rejection effectively killed the tripartite exchange process as a potential vehicle for Forest

8    Service acquisition of the Augspurger Mountain property.

9         12.    Despite this setback, the parties continued to explore other ways to accomplish a

10   purchase of the property, in whole or in part, by the Forest Service.  On July 1, 1996, David

11   Tilton, a Forest Service employee, contacted David Thompson to ask him whether he would

12   be interested in submitting a section 8(o) offer to the Forest Service.  Mr. Thompson indicated

13   that Seeder Tree Company did not want to wait three years for the Forest Service to acquire

14   the property so it preferred to explore other options.

15        13.    Subsequent plans to have the Forest Service acquire the property in whole or in

16   part at a reduced value following a Seeder Tree Company timber harvest in accordance with

17   SMA restrictions also came to naught when Seeder Tree Company determined that it was not

18   in its financial best interest to harvest the property at that point in time.  On March 7, 1997, in

19   a telephone conversation with Forest Service employee Ed Medina, David Thompson

20   indicated that he intended to send a letter to the Forest Service setting forth Seeder Tree's "last

21   offer" to sell the Augspurger Mountain property to the Forest Service without a timber

22   harvest.  Mr. Thompson indicated that he was contemplating making this offer under section

23   8(o).  However, no such letter was ever received by the Forest Service.

24        14.    On September 14, 1997, Mr. Thompson sent a letter to the Forest Service

25   proposing a property exchange, concluding: "This proposal is a reiteration of our offer to sell

26   or trade to the Forest Service and in no way do we want it to conflict with our 8o status."

27   Plaintiff's Exhibit 11.  The plaintiff's counsel had been advised by the Forest Service one

28   month previously that it did not consider that any 8(o) offer was on the table.  Defendant's

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4
(C99-5034(RJB)FDB)

1   Exhibit A-17.  The letter of September 14, 1997, is self-serving, and lacks significant weight.

2       15.    At no time during the January 12, 1996 meeting at Hood River, or at any other

3   time, did Seeder Tree Company make a plain and unambiguous "section 8(o) offer" of the

4   Augspurger Mountain property.

5       16.    To the extent that any of the following Conclusions of Law are deemed to be

6   findings of fact, they are hereby incorporated into the statement of Findings of Fact.

7   **CONCLUSIONS OF LAW**

8       1.    Plaintiff has brought this action under the Columbia River Gorge National Scenic

9   Area Act.  16 U.S.C. §§ 544-544p.  The Court has jurisdiction under 16 U.S.C.

10  §§ 544m(b)(5)(C).

11      2.    16 U.S.C. § 544f(o) provides a special mechanism for private landowners in the

12  Special Management Area of the National Scenic Area to tender a "bona fide offer to sell at

13  fair market value or otherwise convey" their land to the Secretary.  Unlike a conventional

14  offer to sell which has no legal effect if not accepted by the offeror, a "section 8(o) offer," if

15  unaccepted by the Secretary within three years, causes the applicable special management area

16  land use ordinance adopted by the relevant county to be "suspended" as to such property.   In

17  Stevenson v. Rominger, 909 F. Supp. 779 (E.D. Wash. 1995), the Court opined that "[t]he

18  evident purpose of this three year period is to foster the negotiation process between the

19  government and the landowner and also to give the government sufficient time to decide

20  whether or not it wants to keep the landowner's specific parcel as SMA land."  Id. at 784-785.

21  The Court also recognized that the section 8(o) process imposes hardships on the landowner as

22  well as the Forest Service because, regardless of when the Forest Service makes it initial

23  money offer after a property is offered for sale under 16 U.S.C. § 544f(o), a landowner must

24  wait three years before seeking a judicial determination that the Forest Service's money offer

25  was less than fair market value.  Id. at 785.

26      3.    Nothing obligates an owner of property within an SMA of the Columbia River

27  Gorge National Scenic Area who is interested in selling his property to the Forest Service to

28  use the mechanism of 16 U.S.C. § 544f(o).  Landowners are free to offer their properties for

sale to the Forest Service through conventional offers which do not involve the constraints of 16 U.S.C. § 544f(o).  The landlord bears the burden of initiating an offer under this section, and the plaintiff here has the burden of proof that such an offer was made.

4.      Seeder Tree Company did not prove by a preponderance of the evidence that it made a clear and unambiguous bona fide offer to the Forest Service under 16 U.S.C. § 544f(o) at the January 12, 1996 meeting.

5.      While it is undoubtedly true that Seeder Tree Company offered its property for sale to the Forest Service, because Seeder Tree Company did not make a proper section 8(o) offer to sell its property to the Forest Service on January 12, 1996, the applicable special management area land use ordinance adopted by the relevant county has not been suspended as to the Augspurger Mountain property.

6.      To the extent that any of the foregoing Findings of Fact are deemed to be conclusions of law, they are incorporated into these Conclusions of Law.

DATED this 30 day of March, 2000.

_____
FRANKLIN D. BURGESS
United States District Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 6
(C99-5034(RJB)FDB)

ec

United States District Court
for the
Western District of Washington
March 30, 2000

* * MAILING CERTIFICATE OF CLERK * *

Re:  3:99-cv-05034

True and correct copies of the attached were mailed by the clerk to the
following:

        Stephen J. Bean, Esq.
        BEAN & GENTRY
        320 N COLUMBIA ST
        PO BOX 2317
        OLYMPIA, WA  98507

        Cecilia Marie Clynch, Esq.
        BEAN & GENTRY
        320 N COLUMBIA ST
        PO BOX 2317
        OLYMPIA, WA  98507

        Brian C Kipnis, Esq.
        U S ATTORNEY'S OFFICE
        STE 5100
        601 UNION ST
        SEATTLE, WA  98101-3903
        FAX 553-0116

        Gary K Kahn, Esq.
        REEVES, KEHN & EDER
        P O BOX 86100
        PORTLAND, OR  97286
        FAX 1-503-777-8566

        FDB